THE HONORABLE JOHN H. CHUN

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

10

AMAZON.COM, INC., a Delaware
corporation; and AMAZON.COM SERVICES
LLC, a Delaware limited liability corporation,

Plaintiffs,

v.

Individuals and entities doing business as the
Amazon Brand Registry Account VIVCIC; and
DOES 1-10,

Defendants.

Case No.: 2:23-cv-00486-JHC

**PLAINTIFFS' *EX PARTE* MOTION FOR
EXPEDITED DISCOVERY**

<u>**NOTE ON MOTION CALENDAR:**</u>
September 8, 2023

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
401 UNION ST., 5TH FLOOR
SEATTLE, WA 98101

## INTRODUCTION AND RELIEF REQUESTED

This case concerns Defendants' abuse of procedures that Amazon has developed for legitimate owners of copyrights and other intellectual property rights to seek removal of allegedly infringing materials from amazon.com (the "Amazon Store"). Every material aspect of Defendants' takedown scheme was fraudulent: Defendants provided false information to improperly gain access to Amazon's enhanced suite of brand protection tools and then used those tools to launch a bad-faith campaign of several dozen takedown requests that falsely claimed that product listings infringed their intellectual property rights.

Plaintiffs Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon") respectfully move the Court for leave to serve third-party subpoenas prior to the Rule 26(f) conference in order to discover information regarding the true locations and identities of Defendants[1] and other bad actors involved in their fraudulent takedown scheme. Plaintiffs seek leave to serve subpoenas on email service providers, payment service providers, and banks that are linked to Defendants. This expedited discovery is necessary to confirm whether the individuals identified in the documents submitted to Amazon actually registered the account and are involved in this scheme, or if those documents were falsified or contain fraudulent information. Without such discovery, Plaintiffs cannot obtain crucial information about the true identities and locations of Defendants in order to confirm their identities and serve them, and Plaintiffs will be left without a means to recover from Defendants' harm.

## BACKGROUND

### I.    AMAZON'S BRAND REGISTRY AND ITS TAKEDOWN PROCEDURES FOR LEGITIMATE RIGHTHOLDERS

Amazon is among the most trusted brands in the world. To protect its customers and safeguard its reputation for trustworthiness, Amazon invests heavily in preserving the integrity of the Amazon Store. Declaration of Ong Qiu Yi ("Ong Decl.") ¶ 3. As part of these efforts, and consistent with the notice-and-takedown procedure set forth in the Digital Millennium Copyright

---

[1] Along with its Complaint, Amazon filed a letter proposing this case be administered under the protocol outlined in General Order 03-23 and be referred to the magistrates designated under that Order for service-related decisions. ECF No. 1-6.

PLAINTIFFS' *EX PARTE* MOTION FOR
EXPEDITED DISCOVERY                              - 1 -
CASE NO.: 2:23-CV-00486-JHC

FENWICK & WEST LLP
401 UNION ST., 5TH FLOOR
SEATTLE, WA 98101

1    Act (DMCA), 17 U.S.C. § 512, Amazon has developed a suite of intellectual property-protection

2    mechanisms for rightsholders to submit requests for removal of content that they believe violates

3    their intellectual property rights. *Id.* ¶ 4.  The three main methods are (1) by notifying Amazon's

4    Copyright Agent in writing; (2) if the copyright owner has an Amazon account, by submitting

5    notifications via Amazon's Report Infringement form; and (3) if the copyright owner has an

6    Amazon Brand Registry account, by using Amazon's "Report a Violation" tool. *Id.* ¶ 7.

7         Launched in 2017, Amazon Brand Registry is a free service that offers rightsholders an

8    enhanced suite of tools for monitoring and reporting potential instances of infringement. *Id.* ¶ 5.

9    Brand Registry delivers automated brand protections that use machine learning to predict

10   infringement and proactively protect brands' IP. *Id.* ¶ 5.  Brand Registry also provides a powerful

11   "Report a Violation" tool that allows brands to search for and report potentially infringing products

12   using state-of-the-art image search technology. *Id.*  In 2022, through continued improvements in

13   Amazon's automated protections, brands found fewer infringing products in Amazon's stores, with

14   the number of valid notices of infringement submitted by brands in Brand Registry decreasing by

15   more than 35% from 2021. *Id.*

16         Consistent with the DMCA, regardless of the notification method, Amazon asks copyright

17   owners or their agents submitting written notifications alleging copyright infringement to include

18   both "[a] statement by you that you have a good-faith belief that the disputed use is not authorized

19   by the copyright owner, its agent, or the law" and "[a] statement by you, made under penalty of

20   perjury, that the above information in your notice is accurate and that you are the copyright owner

21   or authorized to act on the copyright owner's behalf."  Ong Decl. ¶ 8.  Once a notification of

22   claimed copyright infringement is received, Amazon confirms that it contains the elements

23   required by the DMCA and, if appropriate, expeditiously removes the content that allegedly

24   infringes the purported copyright owner's rights. *Id.* ¶ 9.

25         As an online service provider, Amazon often must rely on the accuracy of statements

26   submitted by purported rightsholders, particularly as copyrights are often unregistered. *Id.*  Indeed,

27   the DMCA framework conditions safe-harbor eligibility on a service provider's expeditious

28   takedown of materials claimed to be infringing in a compliant notification of claimed infringement,

PLAINTIFFS' *EX PARTE* MOTION FOR
EXPEDITED DISCOVERY        - 2 -
CASE NO.: 2:23-CV-00486-JHC

FENWICK & WEST LLP
401 UNION ST., 5TH FLOOR
SEATTLE, WA 98101

*see* 17 U.S.C. § 512(c)(1)(C), without any validation or investigation of the claim, or its veracity, by the service provider.  For that reason, the DMCA expressly prohibits anyone from submitting knowingly false assertions of copyright and permits service providers like Amazon to bring a cause of action for damages and attorneys' fees against those who send bad faith takedown requests.  17 U.S.C. § 512(f).

Lawsuits like this one are integral components of Amazon's efforts to combat improper takedown schemes.  In this Motion, Plaintiffs seek to use expedited discovery to identify and locate the bad actors responsible for the fraudulent takedown scheme at issue here.

### A.    Defendants' Unlawful Use of Takedown Procedures

Defendants are bad actors that have attempted to circumvent Amazon's systems by submitting fraudulent and deliberately false claims of copyright infringement and other information to Amazon.  Here, Defendants enrolled in Amazon Brand Registry to improperly gain access to its enhanced suite of intellectual property-protection tools, and then used those tools to submit dozens of requests to target and remove content in the Amazon store, even though they had no ownership rights to the content at issue.  Ong Decl. ¶ 10; Compl. ¶ 6.  Once admitted into Brand Registry, Defendants submitted 59 fraudulent takedown requests through the "Report a Violation" Tool.  Ong Decl. ¶ 11; Compl. ¶¶ 36, 38, 42.  In reliance on Vivcic's fraudulent takedown requests, Amazon expeditiously acted and removed content Vivcic identified in its complaints.  Ong Decl. ¶ 12; Compl. ¶ 45.

After further investigating Vivcic's voluminous complaints, Amazon learned that Vivcic's claims were false and that Vivcic abused the notice-and-takedown process by deceiving Amazon.  Ong Decl. ¶ 13; Compl. ¶ 46.  Amazon then blocked Vivcic's Brand Registry Account to protect its selling partners, customers, and Amazon's reputation and restored content that had been taken down in the Amazon Store in reliance on Vivcic's fraudulent takedown scheme.  *Id.*

Through their illegal actions, Defendants willfully deceived Plaintiffs, harmed Amazon's selling partners and customers, and threatened the integrity of the Amazon Store.  Defendants' actions constitute misrepresentation of copyright infringement under the Copyright Act, 17 U.S.C. § 512(f), and give rise to additional tort claims for breach of contract, tortious interference with

PLAINTIFFS' *EX PARTE* MOTION FOR
EXPEDITED DISCOVERY                              - 3 -
CASE NO.: 2:23-CV-00486-JHC

FENWICK & WEST LLP
401 UNION ST., 5TH FLOOR
SEATTLE, WA 98101

1    contractual relationship, and fraud for which Plaintiffs seek damages, equitable relief, and their

2    costs and attorneys' fees.  Compl. ¶¶ 47-77.

3         **B.    Plaintiffs' Diligent Attempts to Locate Defendants**

4         Defendants created an Amazon Brand Registry account to facilitate their scheme, and they

5    also created a selling account.  Amazon continues to innovate to stay ahead of bad actors, and

6    Amazon will verify that the applicant to Brand Registry is the Rights Owner of the active registered

7    or pending trademark, including by reaching out to an approved contact listed on the United States

8    Patent and Trademark Office ("USPTO") or other international trademark agency's application or

9    registration. Ong Decl. ¶ 6.  Amazon also requires new and existing selling partners to verify their

10   identity and documentation.  *Id.*  Amazon investigators review the seller-provided identity

11   documents to determine whether those documents are both valid and legitimate, such as

12   confirming that the seller has provided a fully legible copy of the document, verifying that the

13   document matches the information the seller provided to Amazon with respect to their identity,

14   and analyzing whether the document shows any signs of alteration, tampering, or fabrication.  *Id.*

15   These measures have made it more difficult for bad actors to hide.  *Id.*  Amazon's seller

16   verification, coupled with continued advancements in Amazon's machine learning-based

17   detection, are deterring bad actors from even attempting to create new Amazon selling accounts.

18   *Id.*  The number of bad actor attempts to create new selling accounts decreased from 6 million

19   attempts in 2020, to 2.5 million attempts in 2021, to 800,000 attempts in 2022.  *Id.*

20        After discovering Defendants' abuse, Plaintiffs have made substantial, ongoing attempts to

21   identify and locate Defendants, without success.  When enrolling in Brand Registry, Defendants

22   provided Amazon with contact information including a name, an email address, and information

23   relating to their USPTO trademark application.  Ong Decl. ¶ 14.  And shortly before enrolling in

24   Brand Registry, Defendants registered for an Amazon selling account under the merchant name

25   CUNQ YLO ("Defendants' Selling Account" or "Selling Account").  *Id.*  As part of that process,

26   Defendants provided Amazon with certain names, documents, email addresses, and banking

27   information.  *Id.*

28        Plaintiffs, however, are unable to determine from their investigation what role these

PLAINTIFFS' *EX PARTE* MOTION FOR
EXPEDITED DISCOVERY                          - 4 -
CASE NO.: 2:23-CV-00486-JHC

1  particular individuals played with respect to the fraudulent takedown scheme.  For example, they

2  may have willingly allowed their information to be used to open the Selling Account and otherwise

3  played a role in the fraudulent takedown scheme.  On the other hand, it is also possible that

4  Defendants fraudulently used these identification documents to open the Selling Account in order

5  to hide their true identities.  Indeed, in the course of its investigation into the fraudulent takedowns,

6  Amazon determined that Defendants took active steps to mislead Amazon and conceal their true

7  locations and identities when purporting to be rights owners by providing fraudulent names and/or

8  contact information.  Declaration of Brian D. Buckley ("Buckley Decl.") ¶ 3.

9      Plaintiffs now seek expedited discovery to confirm whether the individuals disclosed in the

10 Selling Account documents were involved in the fraudulent takedown scheme, and to uncover the

11 true identities of the persons or entities responsible for this scheme.  As set forth below, Plaintiffs

12 respectfully request that the Court authorize expedited discovery through subpoenas duces tecum

13 directed to payment service providers, banks, and email service providers used by Defendants

14 during their scheme.

15 **II.    PLAINTIFFS' INVESTIGATION OF DEFENDANTS**

16     **A.    Third-Party Financial Accounts**

17     Through their investigation, Plaintiffs have determined that Defendants registered virtual

18 bank accounts with Wells Fargo Bank, N.A., Deutsche Bank Trust Company Americas, and First

19 Century Bank, N.A. to transfer funds to and from their Selling Account.  Ong Decl. ¶ 16.  Amazon's

20 investigation has also shown that Defendants used Payoneer Global Inc., PingPong Global Solutions

21 Inc. ("PingPong"), and LianLian Pay Corporation as its payment service providers.  *Id.*  In cases

22 presenting similar facts, courts have granted plaintiffs' requests to issue subpoenas to banks and

23 payment service providers for financial records associated with defendants' selling accounts, and

24 these records assisted plaintiffs in confirming the defendants' true identities.  *See, e.g.*, *Amazon.com,*

25 *Inc. v. Yong*, 2021 WL 1237863, at *2 (W.D. Wash. Apr. 2, 2021) (granting plaintiffs' motion for

26 expedited discovery); *Amazon.com v. Yong*, 2:21-cv-00170-RSM, Dkt. 28 (amended complaint

27 identifying additional defendant based on subpoenaed data produced by payment service provider).

28 Here, the financial records will set forth the names and locations of the bank account holders

PLAINTIFFS' *EX PARTE* MOTION FOR
EXPEDITED DISCOVERY                              - 5 -
CASE NO.: 2:23-CV-00486-JHC

associated with Defendants' Selling Account, as well as deposits and withdrawals of funds to and from such bank accounts.  Buckley Decl. ¶¶ 4-5.

### B.    Email Service Providers

Defendants' Selling Account was required to register an email address with Amazon in order to communicate with Amazon and conduct business in the Amazon store.  Ong Decl. ¶ 17; Buckley Decl. ¶ 6.  Defendants also identified dozens of different email addresses as contact information in their notifications of claimed infringements.  Ong Decl. ¶ 18; Buckley Decl. ¶ 7.  In cases presenting similar facts, courts have granted plaintiffs' requests to issue subpoenas to email service providers for account records linked to email addresses used by bad actors to control and operate their Amazon selling accounts and communicate with Amazon.  *See Yong*, 2021 WL 1237863, at *2; *Amazon.com, Inc. v. Ackary*, 2022 WL 1027710, at *2 (W.D. Wash. Apr. 6, 2022).  Produced records have demonstrated the IP addresses' location where defendants in similar matters logged into their selling account, which have helped to confirm their true locations.  Buckley Decl. ¶ 8.  Here, records from Defendants' email service providers will likely demonstrate, among other things, the names and contact information Defendants used to register their email accounts, and the IP addresses from which Defendants logged into those accounts, which can be used to help determine Defendants' locations.  *Id.*

## ARGUMENT

### I.    THE COURT SHOULD AUTHORIZE EARLY DISCOVERY TO LOCATE DEFENDANTS AND TO HELP CONFIRM THOSE INVOLVED IN THEIR FRAUDULENT TAKEDOWN SCHEME

Federal Rule of Civil Procedure 26 provides that a party "may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order."  Fed. R. Civ. P. 26(d)(1).  Although the Ninth Circuit has not directly defined the standard for allowing expedited discovery, "courts in this jurisdiction require that the moving party demonstrate that 'good cause' exists to deviate from the standard pretrial schedule."  *Music Grp. Macao Com. Offshore Ltd. v. John Does I–IX*, 2014 WL 11010724, at *1 (W.D. Wash. July 18, 2014) (Martinez, J.); *Microsoft Corp. v. Mai*, 2009 WL 1393750, at *5 (W.D. Wash. May 15, 2009) (Jones, J.); *Renaud v. Gillick*, 2007 WL 98465, at *2 (W.D. Wash. Jan. 8, 2007) (Lasnik, J.).

PLAINTIFFS' *EX PARTE* MOTION FOR
EXPEDITED DISCOVERY                                    - 6 -
CASE NO.: 2:23-CV-00486-JHC

FENWICK & WEST LLP
401 UNION ST., 5TH FLOOR
SEATTLE, WA 98101

"Good cause exists 'where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.'" *Microsoft Corp.*, 2009 WL 1393750, at *5 (quoting *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)). Courts routinely allow early discovery where it will "substantially contribute to moving th[e] case forward" and is "narrowly tailored" for that purpose. *Semitool*, 208 F.R.D. at 277. The relevant factors in assessing good cause are the requesting party's diligence, its intent in seeking the requested information, and whether the opposing party will be prejudiced if the Court grants the motion. *See Renaud*, 2007 WL 98465, at *3; *Music Grp.*, 2014 WL 11010724, at *1–2. Here, each factor supports granting Plaintiffs' motion.

### 1.    Plaintiffs' Diligence

Notwithstanding Amazon's diligent vetting of Defendants when they created the CUNQ YLO seller account—requiring identification documents and matching bank account statements—Plaintiffs subsequently determined through extensive investigation that Defendants provided Amazon with falsified documents and information in connection to the fraudulent takedown scheme. Plaintiffs have attempted to confirm Defendants' identities and locations by: (1) using private investigators (Buckley Decl. ¶ 3); (2) investigating and examining the information Defendants provided to Amazon when creating their seller account (*id.*; Ong Decl. ¶ 20); and (3) searching both public records and specialized investigative databases for the names and addresses provided by Defendants in connection with their seller account (Buckley Decl. ¶ 3). Despite these extensive efforts, Plaintiffs have been unable to confirm whether the named individuals listed in the Selling Account's registration documents had a role in the fake takedown scheme and, if they are involved, their true identities and current whereabouts. Buckley Decl. ¶ 3. Accordingly, this factor supports granting Plaintiffs leave to conduct expedited discovery.

### 2.    Plaintiffs' Intent

Plaintiffs seek information about the true location and identities of Defendants. Buckley Decl. ¶ 3. Plaintiffs seek information to hold Defendants and their conspirators legally accountable for their misconduct. *Id.* For instance, Plaintiffs seek information from PingPong, the payment service provider used by Defendants, which will help Plaintiffs identify and locate

PLAINTIFFS' *EX PARTE* MOTION FOR
EXPEDITED DISCOVERY                    - 7 -
CASE NO.: 2:23-CV-00486-JHC

FENWICK & WEST LLP
401 UNION ST., 5TH FLOOR
SEATTLE, WA 98101

Defendants.  Likewise, discovery from Defendants' email service providers may demonstrate, among other things, the contact information used to register their accounts and the IP addresses from which Defendants logged into those accounts, which can be used to help determine Defendants' locations.  *Id.* ¶ 6.  In short, Plaintiffs reasonably believe that limited expedited discovery of these third parties will help Plaintiffs achieve these goals and advance litigation.  *Id.* ¶ 9.  Because Plaintiffs' intent is to "advance the litigation and save judicial resources," *Renaud*, 2007 WL 98465, at \*3, this factor supports granting Plaintiffs leave to conduct expedited discovery.

### 3.      Prejudice to Defendants

Defendants will suffer no cognizable prejudice if Plaintiffs are granted leave to conduct expedited discovery.  Plaintiffs' request for expedited discovery is narrowly tailored to include only the information necessary to identify and locate the persons and/or entities propagating an illegal campaign that harmed Plaintiffs and their customers.  The requested discovery is also directed at non-parties, not Defendants.  Granting "third party document requests will not impose a significant burden upon [D]efendant[s]." *Renaud*, 2007 WL 98465, at \*3.  Accordingly, Defendants will suffer no cognizable prejudice if the Court grants Plaintiffs' Motion.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully ask the Court to grant leave, prior to the Rule 26(f) conference, to serve Rule 45 subpoenas to obtain information from payment service providers, banks, and email service providers that are linked with the Defendants.  This information is critical to Plaintiffs' ability to locate and serve Defendants and to advance this litigation.  Plaintiffs may request leave to serve additional Rule 45 subpoenas on any other companies or individuals to the extent they are identified in subpoena responses as having responsive information for the limited purpose of identifying and locating Defendants and other bad actors responsible for the scheme alleged in the Complaint.

*I certify that this memorandum contains 2,782 words.*

PLAINTIFFS' *EX PARTE* MOTION FOR
EXPEDITED DISCOVERY                                  - 8 -
CASE NO.: 2:23-CV-00486-JHC

FENWICK & WEST LLP
401 UNION ST., 5TH FLOOR
SEATTLE, WA 98101

1  Dated:  September 8, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

FENWICK & WEST LLP


By: */s/ Brian Buckley*
   Brian D. Buckley (WSBA No. 26423)
   401 Union Street, 5th Floor
   Seattle, WA  98101
   Telephone:  206.389.4515
   Facsimile:  206.389.4511
   Email:       bbuckley@fenwick.com

Attorneys for AMAZON.COM, INC. and
AMAZON.COM SERVICES LLC

PLAINTIFFS' *EX PARTE* MOTION FOR
EXPEDITED DISCOVERY                - 9 -
CASE NO.: 2:23-CV-00486-JHC

FENWICK & WEST LLP
401 UNION ST., 5TH FLOOR
SEATTLE, WA 98101

1

## **LCR 7(e) WORD-COUNT CERTIFICATION**

2       As required by Western District of Washington Local Civil Rule 7(e), I certify that this

3   memorandum contains 2,782 words.

4                                               Dated:  September 8, 2023

5                                               FENWICK & WEST LLP

6

7                                               By: */s/ Brian D. Buckley*
                                                    Brian D. Buckley, WSBA No. 26423

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' *EX PARTE* MOTION FOR
EXPEDITED DISCOVERY                              - 1 -
CASE NO.: 2:23-CV-00486-JHC

FENWICK & WEST LLP
401 UNION ST., 5TH FLOOR
SEATTLE, WA 98101